IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDRES A., | ) |
|     Plaintiff, | ) ) ) |
| v. | ) No. 20 C 3353 |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | ) ) Magistrate Judge Finnegan ) |
|     Defendant. | ) ) ) |

# ORDER

Plaintiff Andres A. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After careful review of the record and the parties' respective arguments, the Court finds that the case must be remanded for further proceedings.

# BACKGROUND

Plaintiff applied for DIB on January 27, 2017, alleging disability since April 5, 2015 due to a broken right arm causing limited mobility and weakness, high blood pressure, and depression. (R. 196, 209). Born in 1954, Plaintiff was 60 years old as of the alleged

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

disability onset date, making him at all relevant times a person of advanced age (age 55 or older). (R. 196); 20 C.F.R. § 404.1563(e). He has either a fourth or sixth grade education from Mexico and worked for approximately 20 years as a van driver for an airport catering business. (R. 58, 210). On April 5, 2015, Plaintiff suffered a work-related accident where he fell off a truck and broke his right arm. (R. 60-61). Plaintiff received workers' compensation benefits through 2016 but he has not engaged in any substantial gainful activity since the accident date. (R. 35, 62, 209).

The Social Security Administration denied Plaintiff's applications initially on April 12, 2017, and again upon reconsideration on August 10, 2017. (R. 77-107). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Jose Anglada (the "ALJ") on October 25, 2018. (R. 51). The ALJ heard testimony from Plaintiff, who was represented by counsel and testified with the assistance of a Spanish interpreter, and from vocational expert Julie Bose (the "VE"). (R. 53-76). On February 8, 2019, the ALJ found that Plaintiff's status-post right elbow fracture is a severe impairment, but that it at no time met or equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 35-36, 42). After reviewing the medical evidence, the ALJ concluded that Plaintiff was disabled from April 5, 2015 through July 23, 2018. During that period, Plaintiff could perform light work with frequent overhead reaching with his right arm. (R. 37-41). The VE testified that Plaintiff's past relevant work was at the medium level (R. 73-74), and the ALJ concluded that given Plaintiff's status as a person of advanced age, the limitation to light work rendered him presumptively disabled under the Medical-Vocational Guidelines. (R. 41).

Beginning July 24, 2018, however, Plaintiff experienced medical improvement allowing him to perform medium work with frequent overhead reaching of his right arm. (R. 42-44). Consistent with the VE's testimony, the ALJ found that as of that date, Plaintiff had the residual functional capacity ("RFC") to perform his past work as a van driver and was no longer disabled. (R. 44-45). The Appeals Council denied Plaintiff's request for review on April 3, 2020. (R. 1-5). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, Plaintiff argues that the ALJ: (1) erred in finding medical improvement as of July 24, 2018 without any record support; and (2) failed to properly consider his mental limitations in making the RFC determination. For reasons discussed in this opinion, the Court finds that the case must be remanded for further consideration of whether Plaintiff medically improved to the point where he can perform medium work.

## **DISCUSSION**

**A.**     **Standard of Review**

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) of the Social Security Act (the "SSA"). In reviewing this decision, the court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "'displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting

3

*Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)).

In making its determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.     Five-Step Inquiry**

To recover disability benefits under the SSA, a claimant must establish that he is disabled within the meaning of the SSA. *Snedden v. Colvin*, No. 14 C 9038, 2016 WL 792301, at *6 (N.D. Ill. Feb. 29, 2016). A claimant is disabled if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to law for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must

4

conduct a standard five-step inquiry, which involves considering whether: "(1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). (citing 20 C.F.R. § 404.1520). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id*.

**C.     Analysis**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in finding that he experienced medical improvement as of July 24, 2018. (Doc. 29, at 7-10). Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A finding of decreased medical severity must be based on "changes in the symptoms, signs or test results associated with [the claimant's] impairment(s)." *Id*.; *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011). "When, as here, the ALJ finds the claimant disabled for a closed period in the same decision in which she finds medical improvement, the severity of the claimant's current medical condition is compared to the severity of the condition as of the disability onset date." *Wofford v. Berryhill*, No. 16 C 4185, 2017 WL 1833186, at *4 (N.D. Ill. May 8, 2017).

5

As noted, the ALJ found that Plaintiff was disabled from April 5, 2015 through July 23, 2018. During that period, Plaintiff had the RFC to perform light work with frequent overhead reaching with his right arm, which precluded his past medium work and made him presumptively disabled under the Medical-Vocational Guidelines. (R. 41). Plaintiff does not challenge any aspect of the ALJ's determination as it relates to the closed period of disability. The ALJ next found that as of July 24, 2018, Plaintiff experienced medical improvement allowing him to perform medium work with the same limitation to frequent overhead reaching with the right arm. (R. 42-44). Plaintiff objects that the specified improvement date is arbitrary and unsupported by the record evidence. (Doc. 29, at 7-10).

In explaining his decision regarding both disability and medical improvement, the ALJ began with a discussion of the medical records. Following Plaintiff's workplace accident on April 5, 2015, he was treated in the emergency department for an obvious deformity of the right elbow. (R. 38, 310). X-rays showed a fracture of the coronoid process of the right ulna, fracture of the radial head, and elbow dislocation. (R. 38, 309, 316). Doctors performed a reduction to relocate the elbow, and post-reduction x-rays showed good alignment. However, there were also some bone fragments from the fracture. (R. 38, 313). Plaintiff was discharged with a splint and a prescription for hydrocodone. (*Id*.). Three days later on April 8, 2015, Plaintiff had open reduction and internal fixation surgery on his right elbow. (R. 38, 327-29, 331). He underwent rehabilitation but continued to complain of shooting pain, stiffness, numbness, and tingling in the elbow and into the fingers. (R. 39, 341). On August 28, 2015, Plaintiff had a right

6

elbow open contracture release and right elbow ulnar nerve anterior intramuscular transposition to help with these symptoms. (R. 39, 339-40).

Approximately seven months later on March 10, 2016, orthopedic surgeon Gabriel S. Levi, M.D. indicated that Plaintiff could return to light duty work with no lifting over 20 pounds. (R. 40, 468). On March 30, 2016, Phillip Rios, OT performed a Functional Capacity Evaluation ("FCE") of Plaintiff. At the time, Plaintiff reported that his lowest functional pain score in the prior 30 days was 2/10, his worst pain score was 3/10, and his current pain score was 2/10. (R. 448). Mr. Rios concluded that Plaintiff could function at the medium physical demand level, including: occasional lifting of 50 pounds with both hands; occasional reaching overhead; constant reaching forward; frequent sitting, standing, and walking; and occasional bending, squatting, kneeling, and climbing of stairs and ladders. (R. 39, 445, 446). Plaintiff demonstrated an ability to sit for 72 minutes, stand for 70 minutes, and walk for 15 minutes with a normal gait and average pace. (R. 39, 450-51). Though Plaintiff exhibited moderately decreased range of motion in extension of the right elbow, his strength was normal. (R. 39, 449).

On May 25, 2016, Carolyn J. Hildreth, M.D. conducted an Internal Medicine Consultative Examination of Plaintiff for the Bureau of Disability Determination Services. Plaintiff had full grip strength of 5/5, 100% fist strength, and normal fine dexterity. (R. 39, 357). X-rays of the right forearm taken that day showed an arthroplasty at the right radial head but were otherwise normal. (R. 39, 369). However, the range of motion in Plaintiff's right elbow was still reduced and Plaintiff told Dr. Hildreth that he could not lift more than 15 to 20 pounds. (R. 39, 356, 358).

Over the next nine months, Plaintiff received regular treatment with his internist Cesar A. Morales, M.D. Plaintiff did not report any right arm-related symptoms on June 2, June 22, July 20, August 10, or November 9, 2016. (R. 387-99). But at an appointment on February 8, 2017, Plaintiff was struggling with tennis elbow and Dr. Morales prescribed a topical cream and referred him to an orthopedist. (R. 387). Plaintiff saw orthopedist Dr. Levi on February 28, 2017. He was not taking any pain medications besides the topical ointment but still complained of stiffness, weakness, reduced range of motion, and an inability to fully extend the right elbow. (R. 39, 406-07). X-rays showed posttraumatic arthritis with osteophytes throughout the elbow. (R. 39, 407). At a follow-up appointment with Dr. Levi on March 7, 2017, Plaintiff reported pain at a level of 2/10 that sometimes went up to 3/10, and continued to demonstrate reduced range of motion and weakness. (R. 39, 403-04). Plaintiff also exhibited reduced range of motion in the right elbow during an appointment with Dr. Morales on March 8, 2017. (R. 3, 433).

On March 16, 2017, state agency reviewer Vidya Madala, M.D. found that Plaintiff was capable of medium work involving: occasional lifting and carrying of 50 pounds; frequent lifting and carrying of 25 pounds; occasional climbing of ladders, ropes, and scaffolds; and occasional overhead reaching with the right arm. (R. 85-87). Five days later on March 21, 2017, Dr. Levi noted that Plaintiff was still having pain (0/10 that day but rising to a maximum of 3/10 at times) and reduced range of motion, as well as "exquisite" tenderness to palpation over the surgical scar. (R. 30, 400-01). Plaintiff had no complaints of right elbow pain when he saw Dr. Morales on April 4, 2017 (R. 430), but a May 8, 2017 x-ray of the right elbow revealed deformity with sclerosis involving the medial humeral epicondyle which "could represent posttraumatic changes." (R. 39, 521).

State agency reviewer Young-Ja Kim, M.D. affirmed Dr. Madala's findings on August 9, 2017, except he added that Plaintiff could not tolerate even moderate exposure to hazards such as machinery and heights. (R. 101-04).

After his April 2017 visit with Dr. Morales, Plaintiff did not seek additional treatment for his right arm again for more than a year until July 24, 2018 when he returned to Dr. Levi. Plaintiff reported that he was doing well with "no pain today" and that he was not taking any medication for pain. (R. 542). Four days earlier on July 20, 2018, however, Dr. Morales submitted an RFC assessment of Plaintiff indicating that he is incapable of competitive employment because: he has significant numbness, weakness, and shooting pain down the right arm into the hand; pain would frequently interfere with his ability to maintain the attention and concentration needed for even simple work tasks; he can never lift and carry more than 10 pounds; he would need to take unscheduled 30-minute breaks 3 to 4 times a day; he would be off-task more than 30% of the workday due to his arm; and he can only perform manipulations with his right arm 10% of the workday. (R. 537-41). There are no further medical notes in the record.

With respect to the closed period of disability, the ALJ gave partial or little weight to all of the opinions of record in determining Plaintiff's RFC. First, the ALJ afforded partial weight to Dr. Levi's March 10, 2016 opinion that Plaintiff could return to light work with a 20 pound lifting restriction. (R. 40). According to the ALJ, "[a]lthough [Plaintiff] could occasionally lift 50 pounds with both hands, I have limited [him] to the light exertional level during this period to accommodate for his reported increasing pain and fatigue in lifting and/or carrying." (*Id.*). The conclusion that Plaintiff could occasionally lift 50 pounds came from Mr. Rios's March 30, 2016 FCE. (*Id.*). The ALJ apparently accepted that

9

portion of the FCE but gave little weight to Mr. Rios's opinion that Plaintiff was "functionally employable at this time," in part because Mr. Rios was not an "acceptable medical source" under 20 C.F.R. § 404.1502. (R. 40, 445). Finally, the ALJ assigned partial weight to the opinions from Drs. Madala and Kim. The ALJ agreed that Plaintiff could occasionally lift and carry 50 pounds but once again "limited [him] to the light exertional level during this period to accommodate for his reported increasing pain and fatigue in lifting and/or carrying." (R. 39).

Turning to the issue of medical improvement, the primary reasons the ALJ gave for finding a decrease in the severity of Plaintiff's condition that allowed him to perform medium work were that he stopped receiving treatment for his right arm for more than a year, he reported doing well with no pain and no use of pain medications on July 24, 2018, and he received no further treatment after that date. (R. 43). As noted, the ALJ always thought Plaintiff was capable of occasionally lifting 50 pounds even during the closed period based on the March 30, 2016 FCE and the opinions from Drs. Madala and Kim. (*Id*.). The decision to restrict Plaintiff to light work at that time turned on his complaints of "increasing pain and fatigue *in lifting and/or carrying*." (R. 39, 40) (emphasis added). In finding medical improvement, however, the ALJ focused solely on whether Plaintiff was complaining of pain and fatigue generally. (R. 43).

The problem with this approach is that there is no evidence in the record that Plaintiff was lifting and carrying anywhere close to 50 pounds, much less that he was no longer experiencing pain and fatigue while doing so. Indeed, Plaintiff testified at the hearing that he did not lift more than 5 pounds. (R. 66-67). Yet medium work requires the ability to lift 50 pounds up to 1/3 of an 8-hour workday. *Yokem v. Comm'r of Soc.*

10

*Sec.*, No. 16 C 3048, 2017 WL 736297, at *6-7 (C.D. Ill. Feb. 24, 2017) (citing SSR 83-10, 1983 WL 31251, at *5). In such circumstances, the absence of complaints of pain could simply reflect that Plaintiff does not require medication or treatment when he refrains from lifting weight beyond his stated capabilities. (R. 66-67).

The ALJ did not credit Plaintiff's testimony about the 5-pound lifting restriction, but the reasons given are problematic. Looking first to the "physical examinations" of record, the ALJ noted that Plaintiff told Dr. Hildreth on May 25, 2016 that he could lift 15 to 20 pounds, not just 5 pounds. (R. 43, 358). Even assuming the reported lifting ability from two years earlier controls, 20 pounds is nowhere near 50 pounds and reflects at most an ability to do light work. The ALJ himself conceded that Plaintiff is presumptively disabled if limited to light work. (R. 40). As for activities of daily living, the ALJ did not improperly equate them with an ability to work as Plaintiff suggests, but the ALJ did fail to explain why the cited tasks (light yard work, light housework, grocery shopping, and playing with the kids) are either inconsistent with Plaintiff's claimed inability to lift more than 5 pounds, or evidence of an ability to occasionally lift 50 pounds. (R. 43). *See Dujuan J. v. Comm'r of Soc. Sec.*, No. 20-CV-614-DWD, 2021 WL 3169254, at *5 (S.D. Ill. July 27, 2021) ("While an ALJ is directed to consider a claimant's daily activities when evaluating his description of symptoms, . . . the ALJ must explain why any perceived inconsistencies undercut his allegations unless the inconsistencies are so obvious that no explanation is necessary.") (internal citations omitted). On the record presented, the Court cannot find that the ALJ supported his subjective symptom evaluation with substantial evidence or a legally proper analysis, so it "must be considered patently wrong." *Ghiselli v. Colvin*, 837 F.3d 771, 778-79 (7th Cir. 2016).

Also missing is a clear explanation for how the ALJ determined that Plaintiff can frequently reach overhead with his right arm. In the March 30, 2016 FCE, Mr. Rios limited Plaintiff to only occasional overhead reaching, and Drs. Madala and Kim imposed the same restriction in their March and August 2017 opinions. (R. 87, 103, 446). The ALJ provided no rationale for rejecting all of these assessments. In fact, the ALJ appears to believe that he actually *adopted* the opinions from Drs. Madala and Kim. (R. 39) ("Their opinions regarding the claimant's ability to reach overhead are supported by his frequently reduced range of motion in his right arm."). Elsewhere in the decision the ALJ stated that the limitation to frequent overhead reaching accounted for Plaintiff's "decreased range of motion in the right elbow" (*id.*), but there is no explanation as to how the ALJ arrived at this conclusion, and no physician of record endorsed frequent overhead reaching. In short, the ALJ failed to "provide a 'logical bridge' between the evidence and his conclusions" about Plaintiff's reaching abilities. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). The ALJ's error is not harmless because the VE testified that if Plaintiff were limited to occasional as opposed to frequent overhead reaching he would not be able to perform his past relevant work. (R. 75).

Viewing the record as a whole, the ALJ's finding of medical improvement as of July 24, 2018 is not supported by substantial evidence. The decision lacks an accurate and logical bridge from the evidence to the ALJ's conclusion that as of that date, Plaintiff could occasionally lift 50 pounds, frequently reach overhead with his right arm, and perform his past medium work as a van driver. The case must be remanded for further consideration of this issue.

**2.     Remaining Arguments**

The Court does not find any specific error with respect to Plaintiff's remaining arguments, but the ALJ should take the opportunity on remand to ensure that the RFC properly accounts for Plaintiff's mental limitations.

## **CONCLUSION**

For the reasons stated above, Plaintiff's request to reverse or remand the ALJ's decision is granted, and the Commissioner's motion for summary judgment [33] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

Dated:  August 19, 2022

ENTER:

_____
SHEILA FINNEGAN
United States Magistrate Judge